# In the
# United States Court of Appeals
## For the Seventh Circuit

————————

No. 03-1527

CARLOS GONZALEZ,

*Petitioner-Appellee*,

v.

CYNTHIA J. O'CONNELL, District Director,
Bureau of Immigration and Customs Enforcement,
and UNITED STATES OF AMERICA,

*Respondents-Appellants*.

————————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 7511—**Milton I. Shadur**, *Judge.*

————————

ARGUED SEPTEMBER 19, 2003—DECIDED JANUARY 21, 2004

————————

Before BAUER, RIPPLE and WILLIAMS, *Circuit Judges.*

RIPPLE, *Circuit Judge.* The Immigration and Naturalization Service ("Agency")[1] initiated removal pro-

---

[1] Recently, the Immigration and Naturalization Service was abolished, and its immigration enforcement function was transferred to the Bureau of Immigration and Customs Enforcement in the newly created Department of Homeland Security. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003). To

(continued...)

ceedings against Carlos Gonzalez in August of 2002 as a result of his conviction in the Circuit Court of Cook County, Illinois, for possession of a controlled substance, cocaine. It also placed Mr. Gonzalez in physical civil immigration custody under the authority of § 236(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(c). After an immigration judge ("IJ") denied Mr. Gonzalez's request for bond, citing § 1226(c)'s mandatory detention requirement, Mr. Gonzalez filed a petition for a writ of habeas corpus. *See* 28 U.S.C. § 2241. His petition alleged that he was entitled to immediate release because § 1226(c)'s mandatory detention requirement was unconstitutional as applied to him. The district court agreed and issued the writ; the Government timely appealed. For the reasons set forth in this opinion, we must reverse the judgment of the district court.

# I
# BACKGROUND

## A. Facts

Mr. Gonzalez is a native and citizen of El Salvador. He entered the United States in 1990 and became a lawful permanent resident of this country in 1994. In November of 2001, Mr. Gonzalez was found guilty of possession of a controlled substance, cocaine, in violation of Illinois law, *see* 720 ILCS 570/402(c), and was sentenced to two years of

---

[1] (...continued)
avoid confusion, we shall refer to this entity as the "Agency." Also, many of the immigration regulations at issue in this case recently were reclassified, although their substance, as it relates to this appeal, remains the same. We shall cite to the new regulations in this opinion.

probation. Accordingly, the Agency placed Mr. Gonzalez in removal proceedings in August of 2002. It charged him with removability as an alien convicted of an aggravated felony, *see* 8 U.S.C. § 1227(a)(2)(A)(iii),[2] and as an alien convicted of a state law relating to a controlled substance, *see* 8 U.S.C. § 1227(a)(2)(B)(i).[3] The Agency also placed him in physical civil immigration custody pending his removal proceedings under the authority of § 1226(c).[4]

On October 17, 2002, an IJ held a custody/bond rede-termination hearing, referred to by Mr. Gonzalez's counsel as the equivalent of a "*Joseph* hearing." The IJ determined that Mr. Gonzalez was subject to mandatory detention pending removal proceedings under § 1226(c) because he was removable as an alien convicted of an aggravated felony and of a state drug offense. Therefore, bond was not available to Mr. Gonzalez.

Mr. Gonzalez did not appeal the IJ's decision to the Board of Immigration Appeals ("BIA"), but, on October 18, 2002, he filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Illinois. He

---

[2] 8 U.S.C. § 1227(a)(2)(A)(iii) provides: "Any alien who is convicted of an aggravated felony at any time after admission is deportable."

[3] 8 U.S.C. § 1227(a)(2)(B)(i) provides: "Any alien who at any time after admission has been convicted of a violation of . . . any law or regulation of a State . . . relating to a controlled substance . . . , other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable."

[4] Under 8 U.S.C. § 1226(c)(1)(B), the Attorney General is required to take into custody any alien who "is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title."

sought an order compelling the Agency to conduct an individualized bond determination. His petition alleged that he was not "deportable" under § 1226(c)(1)(B) because he was not "convicted" of either an aggravated felony, *see* 8 U.S.C. § 1227(a)(2)(A)(iii), or a state law relating to a controlled substance, *see* 8 U.S.C. § 1227(a)(2)(B)(i). His contention that he was not "convicted" for immigration purposes was based on Illinois law, which provides that probationary dispositions, such as the one Mr. Gonzalez received, are not "conviction[s]." 720 ILCS 570/410(g) (mandating that a probationary disposition "is not a conviction . . . for purposes of disqualifications or disabilities imposed by law upon conviction of a crime"). He maintained that § 1226(c)'s mandatory detention requirement violated his right to due process under the Fifth and Fourteenth Amendments because he raised a good-faith argument that he would not in fact be deported.

## B. District Court Proceedings

As a threshold matter, the district court held that Mr. Gonzalez was not required to exhaust his administrative remedies by appealing to the BIA the IJ's determination that he was ineligible for bond. The court determined that his case was excepted from the exhaustion requirement because "the INS authorities are of course bound to conform to Section 1226(c), so that any attempt by Gonzalez to challenge his detention before them would be an exercise in total futility." R.8 at 2.

As to the merits, the district court first noted that under Illinois law probationary dispositions are not "conviction[s]." 720 ILCS 570/410(g). Because both removability grounds charged against Mr. Gonzalez required a "convict-

[ion]," *see* 8 U.S.C. §§ 1227(a)(2)(A)(iii) & 1227(a)(2)(B)(i), the court held there was a "serious substantive legal question" regarding his deportability. R.8 at 2. That being the case, it concluded that Mr. Gonzalez's right to due process under the Fifth and Fourteenth Amendments would be violated if he were subject to mandatory detention under § 1226(c).

## II

## DISCUSSION

We believe it first would be helpful to set out a brief overview of the procedures at issue in this case. Section 1226(c) requires the Attorney General to take into custody and mandatorily detain certain aliens. *See* 8 U.S.C. § 1226(c) ("The Attorney General shall take into custody any alien who . . . ."). Included in this list are aliens who are "deportable" because they have been "convicted" of an aggravated felony, 8 U.S.C. § 1227(a)(2)(A)(iii), or "convicted" of violating a state law relating to a controlled substance, 8 U.S.C. § 1227(a)(2)(B)(i). 8 U.S.C. § 1226(c)(1)(B). After the Agency takes an alien into custody and orders him mandatorily detained under § 1226(c), a "*Joseph* hearing" before an IJ is "immediately provided" if the alien claims he is not covered by § 1226(c). *Demore v. Kim*, 123 S. Ct. 1708, 1712 n.3 (2003); *see also* 8 C.F.R. §§ 236.1(d)(1) & 1236.1(d)(1) (explaining that an IJ may redetermine the initial custody and bond determination of the district director any time before a final deportation order); § 1003.19(h)(1)(ii) (providing that an alien may seek a "determination by an immigration judge that the alien is not properly included" within § 1226(c)). "At the hearing, the detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the INS is

otherwise substantially unlikely to establish that he is in fact subject to mandatory detention." *Kim*, 123 S. Ct. at 1712 n.3 (citations omitted); *see also In re Joseph*, 22 I. & N. Dec. 799, 1999 BIA LEXIS 25, at *14 (BIA 1999) (noting that a *Joseph* hearing provides an alien "the opportunity to offer evidence and legal authority on the question whether the Service has properly included him within a category that is subject to mandatory detention"). Thus, "the [IJ] must necessarily look forward to what is likely to be shown during the hearing on the underlying removal case." *Id.* at *20.

The IJ's ultimate decision "may be based upon any information that is available to the [IJ] or that is presented to him or her by the alien or the Service." 8 C.F.R. § 1003.19(d). If the IJ determines the alien does fall within § 1226(c), then he is without authority to conduct an indi-vidualized bond determination. *See* 8 C.F.R. § 1003.19(h)(1)(i)(E). However, if the IJ determines the alien does not fall within § 1226(c), then he may consider the question of bond. *See In re Joseph*, 22 I. & N. Dec. 799, 1999 BIA LEXIS 25, at *16 (BIA 1999) ("A determination in favor of an alien on this issue does not lead to automatic release. It simply allows an [IJ] to consider the question of bond . . . ."). The IJ's ruling then may be appealed to the BIA for review under the same governing principles. *See* 8 C.F.R. §§ 236.1(d)(3) & 1236.1(d)(3) (explaining that an alien may appeal to the BIA an IJ's custody and bond determinations).

With this structure in mind, we turn to Mr. Gonzalez's petition. Mr. Gonzalez challenges § 1226(c)'s mandatory detention as applied to detainees, such as him, who raise what his counsel characterized as a "good-faith argument" that they will not in fact be deported. Before reaching that contention, however, we must address two threshold mat-

ters. First, we must ensure that we have subject matter jurisdiction to adjudicate Mr. Gonzalez's claim. Next, we must consider whether Mr. Gonzalez is required to exhaust his administrative remedies by appealing to the BIA before bringing his claim via a writ of habeas corpus to federal court.

## A. Subject Matter Jurisdiction

Although both parties agree that 8 U.S.C. § 1226(e) does not deprive this court of jurisdiction, we have an independent duty to verify our subject matter jurisdiction before proceeding. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998). Section 1226(e) states: "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." Arguably, Mr. Gonzalez is contesting a "discretionary judgment" or "decision by the Attorney General" to detain him under § 1226(c), and therefore, under § 1226(e), no court may "set aside" that decision.

That very argument, however, was rejected by this court in *Parra v. Perryman*, 172 F.3d 954 (7th Cir. 1999), and more recently, by the Supreme Court in *Demore v. Kim*, 123 S. Ct. 1708 (2003). In both *Kim* and *Parra*, aliens who were mandatorily detained under § 1226(c) challenged that section as unconstitutional. The Supreme Court in *Kim*, consistent with this court's earlier decision in *Parra*, held that it was not deprived of jurisdiction by § 1226(e) to consider a challenge such as this one because the petitioner was not simply challenging "a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made

regarding his detention or release. Rather, [the petitioner] challenges the statutory framework that permits his detention without bail." *Id.* at 1714 (citing *Parra*, 172 F.3d at 957 ("Section 1226(e) likewise deals with challenges to operational decisions, rather than to the legislation establishing the framework for those decisions.")).

The Supreme Court relied on two rules of statutory construction: " '[W]here Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear,' " *Kim*, 123 S. Ct. at 1714 (quoting *Webster v. Doe*, 486 U.S. 592, 603 (1988)), and "where a provision precluding review is claimed to bar habeas review, the Court has required a particularly clear statement that such is Congress' intent," *id.* (citing *INS v. St. Cyr*, 533 U.S. 289, 308-09 (2001)). With these principles as guidance, the Supreme Court concluded: "Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail." *Id.*

Mr. Gonzalez, like the petitioners in *Kim* and *Parra*, is not challenging "operational decisions" of the Attorney General, *Parra*, 172 F.3d at 957, but "the statutory framework that permits his detention without bail," *Kim*, 123 S. Ct. at 1714. Mr. Gonzalez is different in one respect from the petitioners in *Kim* and *Parra*: He did not concede his deportability. One might argue that this case is therefore different because here a "discretionary decision" or even just a "decision" is necessary to determine whether Mr. Gonzalez is "deportable" and thus within § 1226(c)'s ambit. This "decision," as the argument might proceed, is not subject to review under § 1226(e).

That distinction, however, is illusory. The Attorney General necessarily must make a "decision" that *all* detain-

ees are "deportable" (or "inadmissible") in order to detain them under § 1226(c), even if they concede their deportability. As noted above, the Supreme Court and this circuit have not been persuaded such a "decision" is within § 1226(e)'s ban on review. Furthermore, such a distinction ignores the Supreme Court's blanket holding in *Kim* that Congress' language in § 1226(e) was simply not clear enough to overcome the presumption that it was not depriving the federal courts of jurisdiction over constitutional questions, a presumption which is even stronger in the habeas context. *See Kim*, 123 S. Ct. at 1714. In sum, therefore, we conclude that *Kim* and *Parra* control this case for purposes of the § 1226(e) analysis. Accordingly, we hold that we have subject matter jurisdiction to adjudicate Mr. Gonzalez's habeas claim.

## B. Exhaustion of Administrative Remedies

Mr. Gonzalez did not appeal to the BIA the IJ's October 17, 2002 decision that he fell within § 1226(c). The only question, therefore, is whether he was required to take such a step before filing a habeas petition. The district court determined that he was not because he was excepted from the exhaustion requirement. We review that determination de novo. *See United States v. Castor*, 937 F.2d 293, 296-97 (7th Cir. 1991) (reviewing de novo a district court's determination regarding exhaustion in the context of a habeas petition brought under 28 U.S.C. § 2241(c)(3)).

The exhaustion requirement can be statutorily created or judicially created (so-called "common-law exhaustion"). The difference is key. "Most agency organic acts do not address exhaustion. When they do, however, courts are not free simply to apply the common law exhaustion doctrine with its pragmatic, judicially defined exceptions. Courts

must, of course, apply the terms of the statute." II Kenneth C. Davis et al., *Administrative Law Treatise* § 15.3, at 318 (3d ed. 1994); *Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003) (noting the distinction between statutorily and judicially imposed exhaustion is pivotal because "statutory exhaustion requirements are mandatory, while the judicial (common-law) exhaustion doctrine is discretionary and includes a number of exceptions"); *Glisson v. United States Forest Serv.*, 55 F.3d 1325, 1327 (7th Cir. 1995) ("[T]o the extent that [exhaustion] is a doctrine of federal common law rather than the inflexible command of a statute, it is to be applied with due regard for its underlying purpose and for considerations that may in particular cases counsel for a waiver."). Therefore, were we reviewing Mr. Gonzalez's request that he be excepted from exhaustion on the basis of futility in the context of a statutorily mandated exhaustion requirement, our lone question would be whether Congress intended such an exception. *See Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) (instructing that courts should "not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise"); *United States v. Roque-Espinoza*, 338 F.3d 724, 728-29 (7th Cir. 2003) (considering a request that the exhaustion requirement of 8 U.S.C. § 1326(d)(1) be excused because appeal to the BIA would be futile and noting recent Supreme Court cases "construing the contemporaneous exhaustion requirements of the Prison Litigation Reform Act suggest strongly that futility excuses will not go far").

However, exhaustion of administrative remedies is not statutorily mandated in Mr. Gonzalez's case. The INA mandates exhaustion in order to challenge "final order[s] of removal." 8 U.S.C. § 1252(d)(1). However, this provision does not cover challenges to preliminary custody or bond determinations, which are quite distinct from "final order[s]

of removal." *See Gornicka v. INS*, 681 F.2d 501, 505 (7th Cir. 1982) ("[I]t is clear bond hearings are separate and apart from deportations hearings. . . . A bond determination is not a final order of deportation . . . and does not effect [sic] the deportation proceeding."). Also, Congress requires exhaustion for certain types of habeas petitions, but not for those petitions, such as Mr. Gonzalez's, brought under 28 U.S.C. § 2241. *See James v. Walsh*, 308 F.3d 162, 167 (2d Cir. 2002) ("Section 2254(b)(1) requires state prisoners to exhaust all available state court remedies before filing a Section 2254 petition, whereas Section 2241 contains no such exhaustion requirement.").

"[W]here Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992).[5] In exercising that discretion, we must balance the individual and institutional interests involved, taking into account "the nature of the claim presented and the characteristics of the particular administrative procedure provided." *Id.* at 146. We start with "the general rule that parties exhaust prescribed administrative

---

[5] *McCarthy v. Madigan*, 503 U.S. 140 (1992), has been superseded by statute to the extent it held that federal prisoners seeking monetary damages in a *Bivens* action are not required under 42 U.S.C. § 1997e to exhaust administrative remedies provided by the Bureau of Prisons. *See Wendell v. Asher*, 162 F.3d 887, 890 (5th Cir. 1998) (noting that the Prison Litigation Reform Act, Pub. L. No. 104-134, § 803, 110 Stat. 1321, which took effect April 26, 1996, changed the exhaustion requirements contained in 42 U.S.C. § 1997e). However, *McCarthy*'s principle that when exhaustion is not statutorily mandated, "sound judicial discretion governs," 503 U.S. at 144, remains good law, as does its further admonitions on how that discretion should be utilized. *See, e.g., Zephyr Aviation, L.L.C. v. Dailey*, 247 F.3d 565, 570-73 (5th Cir. 2001).

remedies before seeking relief from the federal courts." *Id.* at 144-45; *see also Sanchez v. Miller*, 792 F.2d 694, 697 (7th Cir. 1986) (accord). This rule, however, is not absolute. We have held that individual interests demand that exhaustion be excused when

> (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised.

*Iddir v. INS*, 301 F.3d 492, 498 (7th Cir. 2002) (internal quotations and citations omitted).

Mr. Gonzalez does not suggest that an "unreasonable delay" would have resulted from an appeal to the BIA. Rather, consistent with the district court, he relies on a combination of the latter three exceptions. Specifically, he argues that an appeal to the BIA would have been "futile," and thus unnecessary, because the BIA is without jurisdiction to decide constitutional questions, such as the due process question he presented to the district court. In relying on the futility exception, Mr. Gonzalez faces a heavy burden because futility only exists if there is "no reasonable prospect that [Mr. Gonzalez] could obtain any relief" by pursuing an appeal to the BIA. *Health Equity Res. Urbana, Inc. v. Sullivan*, 927 F.2d 963, 965 (7th Cir. 1991). Although we ultimately agree that futility's high standard is met in this case, we cannot accept Mr. Gonzalez's suggested broad rationale for this holding.

Mr. Gonzalez's challenge is ultimately a constitutional one, and an exception to the exhaustion requirement has

been carved out for constitutional challenges to Agency procedures because the BIA has no jurisdiction to adjudicate constitutional issues. *See Rashtabadi v. INS*, 23 F.3d 1562, 1567 (9th Cir. 1994). Although his ultimate challenge is constitutional, the premise of his constitutional argument is statutory. Mr. Gonzalez argues that, because he has raised a good-faith argument that he is not in fact deportable under the statute, to mandatorily detain him under § 1226(c) would violate his rights to due process under the law. His predicate statutory argument regarding his deportability is that he was not "convicted" for purposes of 8 U.S.C. §§ 1227(a)(2)(A)(iii) & 1227(a)(2)(B)(i), and therefore, he was not legally "deportable" under those sections or eligible for mandatory detention under § 1226(c)(1)(B).

Although it is not entirely clear from the record, the IJ apparently rejected this statutory argument at the *Joseph* hearing. *See* R.6, Ex.2. It is unquestionable that the BIA could have considered that predicate statutory argument on an appeal from the IJ's determination. *See, e.g., In re Salazar-Regino*, 23 I. & N. Dec. 223, 2002 BIA LEXIS 2 (BIA 2002) (considering whether an alien who received "deferred adjudication" had been "convicted" for immigration purposes). It is likewise clear that the BIA could have granted Mr. Gonzalez relief, in the form of an order compelling the IJ to perform an individualized bond hearing, if it found his statutory contention meritorious. Indeed, as discussed at the outset of our discussion, a whole web of procedural mechanisms are set out in the regulations and decisions interpreting them for the very purpose of allowing both the IJ and BIA the opportunity to determine that an alien does not fall within § 1226(c) before he is mandatorily detained.

Thus, the question becomes whether, by framing his challenge as one of constitutionality, with the statutory issue as

a mere predicate to that argument, a detainee such as Mr. Gonzalez may skip bringing the statutory issue before the BIA. As a general rule, the answer to that question must be no. The Supreme Court has set out two purposes for exhaustion: "protecting administrative agency authority and promoting judicial efficiency." *McCarthy*, 503 U.S. at 145; *see also Castaneda-Suarez v. INS*, 993 F.2d 142, 144-45 (7th Cir. 1993). Requiring exhaustion in this circumstance fits both. As to administrative authority, we must bear in mind that the Agency has particular expertise in interpreting the INA. *See McCarthy*, 503 U.S. at 145 ("Exhaustion concerns apply with particular force . . . when the agency proceedings in question allow the agency to apply its special expertise."). Also, as a matter of comity, the Agency should have the opportunity, without reaching the constitutional issue, to provide the petitioner the ultimate relief requested in the first instance. *Id.* ("[T]he exhaustion doctrine recognizes the notion, grounded in deference to Congress' delegation of authority to coordinate branches of Government, that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer."). In this case, if the BIA had concluded that Mr. Gonzalez's statutory contention had merit, it could have ordered an individualized bond determination hearing, which was the same relief ordered by the district court through a writ of habeas corpus.

In terms of judicial efficiency, under these circumstances, the BIA "could well resolve any controverted matter without the need for involvement by the federal courts." *Duvall v. Elwood*, 336 F.3d 228, 232 (3d Cir. 2003); *see also McCarthy*, 503 U.S. at 145 ("When an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted, or at least piecemeal appeals may be avoided."). If not, we are always available "to consider any constitutional

challenge upon completion of the administrative proceedings." *Duvall*, 336 F.3d at 232. Furthermore, in adjudicating such a challenge, we normally will benefit not only from a more complete record, but also from the agency's expertise on questions presented to us, such as statutory questions tied to broader constitutional issues. *See McCarthy*, 435 U.S. at 145 ("[E]ven where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration, especially in a complex or technical factual context."). For these reasons, we hold that a petitioner with a statutory argument that has a reasonable prospect of affording him relief may not skip the administrative process and go straight to federal court by simply reconstituting his claim as constitutional and claiming futility. *See Health Equity Res. Urbana*, 927 F.2d at 965; *see also Mojsilovic v. INS*, 156 F.3d 743, 748 (7th Cir. 1998) ("Although due process claims do not usually require exhaustion because the [BIA] cannot adjudicate constitutional issues, the requirement applies when the petitioner's claim involves procedural errors correctable by the administrative tribunal." (internal quotation and citation omitted)).

That does not end our inquiry in this case, however, because it appears that Mr. Gonzalez had "no reasonable prospect [of obtaining] any relief" by an appeal to the BIA because the BIA had clearly and repeatedly taken a position contrary to Mr. Gonzalez's lone statutory contention. *Health Equity Res. Urbana*, 927 F.2d at 965. Mr. Gonzalez advanced that he was not within § 1226(c)'s mandatory detention ambit because his Illinois probationary disposition did not count as a "conviction" for immigration purposes. However, the BIA held in *In re Roldan-Santoyo*, 22 I. & N. Dec. 512, 1999 BIA LEXIS 7 (BIA 1999), that "conviction" for immigration purposes is not defined by state law, but by

8 U.S.C. § 1101(a)(48)(A), under which Mr. Gonzalez's Illinois disposition counts as a "conviction."[6] The BIA strongly reaffirmed that position in *In re Salazar-Regino*, 23 I. & N. Dec. 223, 2002 BIA LEXIS 2 (BIA Feb. 14, 2002), approximately eight months before the IJ held on October 17, 2002, that Mr. Gonzalez fell within § 1226(c)'s ambit because he was "convicted" for immigration purposes. As counsel for the Government noted at oral argument, the BIA's decision in *Salazar-Regino* made clear that the BIA deemed his statutory contention to be without merit. Furthermore, there is nothing to indicate the BIA would change its position.[7] Therefore, appealing to the BIA would

---

[6]  8 U.S.C. § 1101(a)(48)(A) provides:

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

This court was faced with a plea of guilty and probationary disposition under 720 ILCS 570/410 in *Gill v. Ashcroft*, 335 F.3d 574 (7th Cir. 2003), and concluded the "plea of guilty satisfies part (i) of [§ 1101(a)(48)(A)], and the term of probation satisfies part (ii), so he has been 'convicted' even though 'adjudication of guilt has been withheld.'" *Id.* at 576 (quoting 8 U.S.C. § 1101(a)(48)(A)).

[7]  To the contrary, it appears the BIA was firm in its view that "conviction" is defined by 8 U.S.C. § 1101(a)(48)(A), and not state law, at the time the IJ rejected Mr. Gonzalez's statutory argument on October 17, 2002. This is demonstrated not only by *Roldan-Santoyo* and *Salazar-Regino*, but also by the fact that on July 15, (continued...)

have been "futile" because the BIA had "predetermined" the statutory issue, *Iddir*, 301 F.3d at 498, and Mr. Gonzalez had "no reasonable prospect" of obtaining relief, *Health Equity Res. Urbana*, 927 F.2d at 965. *See Atlantic Richfield Co. v. United States Dep't of Energy*, 769 F.2d 771, 782 (D.C. Cir. 1984) ("[E]xhaustion is not required where, as here, it is highly unlikely that the [agency] would change its position." (internal quotation and citation omitted)); 3 Charles H. Koch, Jr., *Administrative Law and Practice* § 13.22[9], at 351 (2d ed. 1997) ("Where the agency has ruled on the issue in a proceeding involving another party, the exhaustion requirement may be satisfied.").[8]

## C. Due Process Claim

The district court issued a writ of habeas corpus because it held that, as applied to Mr. Gonzalez, § 1226(c) violated due process because Mr. Gonzalez's statutory contention posed a "serious substantive legal question" regarding his deportability. R.8 at 2. We review a district court's decision

---

[7] (...continued)
2002, the BIA summarily affirmed an IJ's holding that a petitioner's conviction and probationary disposition under 720 ILCS 570/410(g), the same Illinois statute governing Mr. Gonzalez's probationary disposition, is a "conviction" for immigration purposes under 8 U.S.C. § 1101(a)(48)(A). *See* Appellant's Opening Brief at 5-6 & n.2, *Gill v. Ashcroft*, 335 F.3d 574 (7th Cir. 2003) (No. 02-2994).

[8] *Cf. Lampkins v. Gagnon*, 710 F.2d 374, 375 (7th Cir. 1983) (holding that exhaustion in Wisconsin state court was not required where recent decisions of the Wisconsin Supreme Court made it clear that pursuit of the prisoner's claims would have been futile).

to grant a writ of habeas corpus de novo. *See Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003). We also review constitutional questions and non-constitutional questions of law de novo. *See United States v. Israel*, 317 F.3d 768, 770 (7th Cir. 2003); *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 628 (7th Cir. 2002).

The Supreme Court has instructed that government detention is inconsistent with due process unless the detention is "ordered in a *criminal* proceeding with adequate procedural protections, or, in certain special and narrow nonpunitive circumstances where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (internal quotations and citations omitted). After this case was decided by the district court, the Supreme Court squarely held in *Demore v. Kim*, 123 S. Ct. 1708 (2003), that "[d]etention during removal proceedings [pursuant to § 1226(c)] is a constitutionally permissible part of the process." *Id.* at 1721-22. This is the same result that this court reached in *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999). In both *Kim* and *Parra*, however, the detainees at issue conceded their deportability. *See Kim*, 123 S. Ct. at 1717; *Parra*, 172 F.3d at 958. Indeed, *Kim*'s holding was expressly premised on that fact: "The INS detention of respondent, a criminal alien who has *conceded that he is deportable*," is constitutional. *Kim*, 123 S. Ct. at 1722 (emphasis added); *see also Parra*, 172 F.3d at 958 (accord). These cases, therefore, left open the question of whether mandatory detention under § 1226(c) is consistent with due process when a detainee makes a colorable claim that he is not in fact deportable. Before *Kim*, but after *Parra*, several district courts in our circuit held that § 1226(c) is unconstitutional as applied to detainees who have a good-faith claim that they

will ultimately be permitted to remain in the country. *See, e.g., Bonsol v. Perryman*, 240 F. Supp. 2d 823, 827 (N.D. Ill. 2003).

It is not necessary, however, for this court to reach this important issue in this case. After the district court's decision in this case, this court decided *Gill v. Ashcroft*, 335 F.3d 574 (7th Cir. 2003). *Gill* squarely rejected the argument that Mr. Gonzalez advanced before the district court that he was not in fact "deportable": that "convict[ion]" for immigration purposes is defined by state law, and that he was not "convicted" according to Illinois law because he only received a disposition of probation. *See* 720 ILCS 570/410(g) (mandating that a disposition of probation is not a "conviction"). Specifically, *Gill* held that the definition of "conviction" for immigration purposes is governed by 8 U.S.C. § 1101(a)(48)(A), and that a probationary disposition under 720 ILCS 570/410 following a plea of guilty qualifies as a "conviction" under that definition. *See Gill*, 335 F.3d at 579. *Gill*, in effect, stripped Mr. Gonzalez of the predicate argument underlying his constitutional claim—that he has raised a "good-faith challenge" to his deportability—and likewise rendered void the district court's determination that Mr. Gonzalez had posed a "serious substantive legal question" regarding his deportability. In the language of *Parra*, after *Gill*, Mr. Gonzalez's "legal right to remain in the United States ha[d] come to an end." *Parra*, 172 F.3d at 958.

Mr. Gonzalez agrees that "*Gill* addresses the issue of his removability," but argues that issue is not "dispositive" in this case. Appellee's Br. at 13. Although his argument in this regard is not entirely clear, he appears to be arguing that the mere fact that he contests his deportability, regardless of whether that contention is meritless or not, is enough to take him outside the reach of *Kim* and *Parra*. As

an initial matter, this position cuts against the very argument he emphasized to this court: that § 1226(c) is unconstitutional as applied to detainees with a *good-faith* argument that they are not in fact deportable. A distinction between petitioners who raise facially meritless claims and those who concede their deportability is one of form and not substance. Both are without a legal right to remain in the United States. *See Parra*, 172 F.3d at 958.

Furthermore, such a distinction cannot be squared with the Supreme Court's decision in *Kim*. The Court in *Kim* held that "[d]etention during removal proceedings is a constitutionally permissible part of the process*." Kim*, 123 S. Ct. at 1722. Again, under Mr. Gonzalez's theory, § 1226(c) would be violative of due process, and thus could be avoided, when a detainee makes *any* claim, no matter how ridiculous, that he is not in fact deportable. If that position is correct, *Kim*'s holding is practically void, as is the congressional purpose behind § 1226(c) "of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed," a congressional purpose the Court in *Kim* accorded significant weight. *Id.* at 1720.

A wholly different case arises when a detainee who has a good-faith challenge to his deportability is mandatorily detained under § 1226(c). *See Kim*, 123 S. Ct. at 1738 (Souter, J., dissenting) ("Some individual aliens covered by § 1226(c) have meritorious challenges to removability or claims for relief from removal. See Brief for Citizens and Immigrants for Equal Justice et al. as *Amici Curiae* 10-20. As to such aliens . . . the Government has only a weak reason under the immigration laws for detaining them."). However, this is not such a case. We therefore hold that, because *Kim* and

*Parra* control this case, Mr. Gonzalez's due process challenge to § 1226(c) must fail.

## Conclusion

For the foregoing reasons, we reverse the judgment of the district court.

REVERSED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*