Arthur **CAMPBELL,** Petitioner,

v.

Bruce **CHADBOURNE,** Interim Field Office Director for Detention and Removal, et al., Respondents.

Civil Action No. 07–10184–PBS.

United States District Court, D. Massachusetts.

July 19, 2007.

---

Frank Crowley, Immigration and Customs Enforcement, Dept. of Homeland Secur, Boston, MA, for Respondent.

Mark W. Shea, Shea, Larocque & Wood LLP, Cambridge, MA, for Petitioner.

## ORDER ADOPTING REPORT AND RECOMMENDATION

PATTI B. SARIS, District Judge.

"I adopt the report and recommendations as unopposed and dismiss the case."

## *REPORT AND RECOMMENDATION ON RESPONDENTS' MOTION TO DISMISS*

June 28, 2007.

DEIN, United States Magistrate Judge.

### I. *INTRODUCTION*

The petitioner, Arthur Campbell ("Campbell" or "Petitioner"), has filed a petition for a writ of habeas corpus ("Petition") (Docket No. 1) challenging his detention by the Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("ICE") in connection with immigration proceedings. He has named as respondents Bruce Chadbourne, the Field Office Director for Detention and Removal at ICE, Andrea Cabral, then Sheriff of Suffolk County, and Gerard Horgan, the Superintendent of the Suffolk County House of Correction where Campbell is being held (collectively, "Respondents").

Campbell entered this country as a refugee. Despite a statutory scheme that contemplates that refugees will apply for lawful permanent resident status within one year of coming to the United States, Campbell has refused to apply for such status on the grounds that he may be deported if found not to be qualified to attain permanent resident status. Campbell contends that, as a refugee, he is not subject to deportation. He challenges his continued detention pending completion of removal proceedings, and asserts that he should be able to remain in this country indefinitely as a refugee.

The matter is presently before the court on the Respondents' Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) (Docket No. 4). By their motion, the Respondents assert that this court lacks subject matter jurisdiction over immigration removal cases. They further assert that the Petition must be dismissed because Campbell has failed to exhaust his administrative remedies. This court finds that although the District Court retains jurisdiction over challenges to detention such as Campbell's, Campbell should be required to exhaust available administrative remedies before seeking relief in federal court. Accordingly, this court recommends to the District Judge to whom this case is assigned that the Respondents' Motion to Dismiss (Docket No. 4) be ALLOWED.

### II. *STATEMENT OF FACTS*

Campbell is a Liberian national who was admitted to the United States on September 19, 2000 as a refugee under section 207 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1157. (Petition ¶ 4; Return and Memorandum of Law in Support of Motion to Dismiss ("Resp.Mem.") (Docket No. 5) at 2). On May 5, 2005, Campbell entered a plea of *nolo contendere* in Rhode Island state court to one count each of Manufacture/Delivery/Possession with Intent to Deliver Marijuana, Conspiracy to Violate the Controlled Substances Act, and Breaking and Entering a Dwelling. (Petitioner's Opposition to Respondent's Motion to Dismiss ("Pet.'s Mem.") (Docket No. 7), Attach. A). He received a sentence of ten years on each of the charges, to serve six months, with 114 months of probation on each of the charges. (*Id.*). The sentences were retroactive to March 8, 2005, and were to run concurrently. (*Id.*).

On June 29, 2006, after having been released from custody by the State of Rhode Island, Campbell was taken into custody by ICE and removal proceedings were initiated against him pursuant to an administrative Notice to Appear.[1] (Pet.'s Mem. at 2; Resp. Mem. at 2). Subsequently, on August 22, 2006, Campbell was notified that he was to return to the U.S. Citizenship and Immigration Services ("USCIS") "for inspection and examination for admission to the United States as an immigrant" pursuant to section 209(a) of the INA, and he was directed to complete a Form I–485 application for permanent resident status. (Resp.Mem., Attach.D). This was in accordance with immigration regulations which provide in relevant part:

> (1) Every alien in the United States who is classified as a refugee under part 207 of this chapter, whose status has not been terminated, *is required to apply to the Service 1 year after entry* in order for the Service to determine his or her admissibility under section 212 of the [INA].

8 C.F.R. § 209.1(a)(1) (emphasis added). The application is to be made by way of a Form I–485. 8 C.F.R. § 209.1(b).

Campbell refused to complete the Form I–485 because it "would open the possibilities for the Petitioner's removal from the United States...." (Petition ¶ 11). He contends that he cannot be removed as long as he maintains his status as a refugee. (*Id.*¶ 10). In light of Campbell's refusal to submit the application for permanent residence or to otherwise participate in the process, on September 28, 2006, an Immigration Judge terminated the removal proceedings without prejudice. (*Id.* ¶ 9; Resp. Mem. at 3). Campbell nevertheless remained in ICE custody. (*See* Petition ¶ 12; Resp. Mem. at 3).

On January 30, 2007, Campbell filed the instant Petition for habeas corpus challenging the lawfulness of his detention. Thereafter, on February 5, 2007, Campbell was served in-hand with a notice of interview regarding his admissibility to the United States as a permanent resident. (Pet.'s Mem. at 2; Resp. Mem., Attach. A). At the interview, which took place on February 6, 2007, Campbell refused to be placed under oath and refused to answer any questions posed by an immigration officer. (Pet.'s Mem. at 2; Resp. Mem., Attach. A). Additionally, Campbell continued to refuse to file a Form I–485 application for permanent resident status. (Resp.Mem., Attach.A).

Following the interview, the USCIS determined that Campbell was inadmissible to the United States pursuant to INA § 212(a)(2)(A)(i)(II) and § 212(a)(2)(C)(i) due to his May 5, 2005 convictions in Rhode Island state court. (*Id.*). Accordingly, on February 7, 2007, the USCIS again initiated removal proceedings against Campbell pursuant to another Notice to Appear. (Resp.Mem., Attach.B). Campbell also was notified that he would be detained, pursuant to section 236 of the INA, pending a final determination on removal, and that he could request a review of the detention decision by an Immigration Judge. (*Id.*).

A hearing was scheduled before an Immigration Judge on February 8, 2007.

---

1. The parties dispute whether Campbell was taken into custody immediately upon his release from incarceration. Campbell claims that removal proceedings were not initiated until approximately nine months after his release. (Pet.'s Mem. at 2). The Respondents assert that ICE took Campbell into custody immediately following his release from the Rhode Island Adult Correctional Institution, where he was serving a sentence unrelated to his May 5, 2005 convictions, and that Campbell has admitted as much in open court. (Resp. Reply Mem. (Docket No. 8) at 1).

(Pet.'s Mem. at 2–3; Resp. Mem. at 5). Campbell appeared but declined to seek a custody determination before the Immigration Judge. The hearing was continued to February 22, 2007 and then to March 22, 2007 so that Campbell could obtain counsel. (Pet.'s Mem. at 3). A hearing was held on March 22, 2007, at which time the Immigration Judge sustained the removal charges, and the case was reset to April 5, 2007 so that Campbell could file an application for relief from removal. (*See* Status Report (Docket No. 9)). On April 5, 2007, Campbell refused to allow his fingerprints to be taken, as required for an application for relief from removal. (*Id.*). Consequently, Campbell's application was deemed abandoned and denied, and he was ordered removed to Liberia. (*Id.*).

Campbell did not appeal the removal order, but he did move to reopen his removal case. (*Id.*). The motion was allowed on May 14, 2007 and the Immigration Judge has scheduled a hearing on Campbell's application for relief from removal for September 11, 2007.(*Id.*).

### III. *ANALYSIS*

#### A. *This Court's Jurisdiction Over Campbell's Petition*

##### *The Real ID Act*

■ The Respondents have moved to dismiss the Petition on the grounds that this court lacks jurisdiction over habeas challenges in immigration removal cases pursuant to the Real ID Act of 2005. (Resp. Mem. at 5–10). However, because Campbell is challenging the lawfulness of his detention rather than a final decision to remove him from the United States, and this court retains jurisdiction over such challenges, the Respondents are not enti-

---

**2.** The Real ID Act is part of the broader Emergency Supplementation Appropriations Act for Defense and Global War on Terror,

tled to dismissal for lack of subject matter jurisdiction based on the Real ID Act.

On May 11, 2005, Congress enacted the Real ID Act of 2005, Pub.L. No. 109–13, 119 Stat. 231, 302.[2] Pursuant to § 106 of the Real ID Act, the Court of Appeals has exclusive jurisdiction over habeas petitions challenging a final administrative order of removal, deportation, or exclusion. *See Ishak v. Gonzales,* 422 F.3d 22, 29 (1st Cir.2005). However, as the First Circuit and other courts have concluded, jurisdiction to hear challenges to detention, rather than to removal decisions, remains with the District Court. *Id.* at 29, n. 5; *Hernandez v. Gonzales,* 424 F.3d 42, 42–43 (1st Cir.2005), and cases cited. *See also Gemayel v. Cabral,* 472 F.Supp.2d 6, 7 (D.Mass.2007) (District Court has jurisdiction over habeas corpus petition to the extent that it challenges pre-deportation detention).

In the instant case, by his Petition, Campbell is challenging his continued detention in light of his refugee status. He is not challenging a final removal order. In fact, he filed his Petition after the initial removal proceedings were terminated and before USCIS had even initiated new removal proceedings. Even at present there is no final decision as to removal. Campbell is seeking "a writ of habeas corpus directing the Respondents to release [him] from [their] physical custody and indefinite detention." (Petition at p. 6). Therefore, Campbell's Petition is properly before this court.

##### *8 U.S.C. § 1226(e)*

■ Although not raised by the parties, this court must also determine whether this court has jurisdiction to hear Campbell's habeas petition in light of 8 U.S.C.

---

and Tsunami Relief, 2005, Pub.L. No. 109–13, 119 Stat. 231 (May 11, 2005).

§ 1226(e). *See Gonzalez v. O'Connell*, 355 F.3d 1010, 1014 (7th Cir.2004) (although effect of § 1226(e) on court's authority to review immigrant's detention status not raised by the parties, court has "an independent duty to verify our subject matter jurisdiction before proceeding."). Specifically, the issue is as follows. Campbell is currently being detained pursuant to section 236(c) of the INA, 8 U.S.C. § 1226(c), which requires the Attorney General to take into custody and detain aliens who are removable from this country because they have been convicted of an aggravated felony, 8 U.S.C. § 1227(a)(2)(A)(iii), or of violating controlled substances laws, 8 U.S.C. § 1227(a)(2)(B)(i). Section 1226(e) provides:

> [t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e). "Arguably, [Campbell] is contesting a 'discretionary judgment' or 'decision by the Attorney General' to detain him under § 1226(c), and therefore, under § 1226(e), no court may 'set aside' that decision." *O'Connell*, 355 F.3d at 1014.

Having raised the issue, however, this court rejects it and concludes that § 1226(e) does not deprive the District Court of subject matter jurisdiction over Campbell's habeas corpus petition. *See id.* (court has jurisdiction over habeas challenge to immigrant's detention). Thus, in *Demore v. Kim*, 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003), the United States Supreme Court rejected an argument that 8 U.S.C. § 1226(e) deprives federal courts of jurisdiction over habeas petitions challenging the constitutionality of the mandatory detention provisions set forth in § 1226(c). *Id.* at 516–17, 123 S.Ct. at 1713–14. As the Court held, "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." *Id.* at 517, 123 S.Ct. at 1714 (quoting *Webster v. Doe*, 486 U.S. 592, 603, 108 S.Ct. 2047, 2053, 100 L.Ed.2d 632 (1988)). It further confirmed that "where a provision precluding review is claimed to bar habeas review, the Court has required a particularly clear statement that such is Congress' intent." *Id.* Since "Section 1226(e) contains no explicit provision barring habeas review" the *Demore* court found no that the statute did not preclude a constitutional challenge to the alien's continued detention. *Id.*

*Demore* did not address the specific issue presented by Campbell's habeas petition, namely, the constitutionality of his continued detention despite his refusal to voluntarily apply for a change in his refugee status. However, the analysis undertaken by the *Demore* court is equally applicable here. There is no reference in the relevant statutory scheme which contains an express statement of Congressional intent to bar habeas review. Under such circumstances, the District Court has jurisdiction to address Campbell's habeas petition. *See INS v. St. Cyr*, 533 U.S. 289, 299, 121 S.Ct. 2271, 2278–79, 150 L.Ed.2d 347 (2001) ("Implications from statutory text or legislative history are not sufficient to repeal habeas jurisdiction; instead, Congress must articulate specific and unambiguous statutory directives to effect a repeal"); *Saint Fort v. Ashcroft*, 329 F.3d 191, 200–01 (1st Cir.2003) (Habeas jurisdiction has not been repealed in immigration cases as there has been "no statement of congressional intent to preclude review of constitutional claims" and Congress had "knowledge of judicial precedents interpreting similar provisions" such that it could have inserted appropriate language

if had intended to bar habeas jurisdiction); *Grant v. Zemski,* 54 F.Supp.2d 437, 440 (E.D.Pa.1999) (Since "§ 236(e) does not contain a clear and express statement that habeas jurisdiction has been modified in any way" District Court has jurisdiction to hear constitutional challenge to an immigrant's mandatory detention under § 236(c)). Therefore, the Respondents' motion to dismiss on the basis that this court lacks jurisdiction over Campbell's habeas petition is without merit.

### B. *Exhaustion of Administrative Remedies*

The Respondents also seek dismissal of the Petition on the grounds that Campbell has failed to exhaust administrative remedies that are available to him. (Resp. Mem. at 10–12). Pursuant to 8 C.F.R. § 1003.19, Campbell was entitled to have his custody determination reviewed by an Immigration Judge and to pursue an appeal of any decision rendered by the Immigration Judge to the Board of Immigration Appeals ("BIA"). *See* 8 C.F.R. § 1003.19(a) & (f). Campbell does not dispute the fact that he has not pursued any such relief at the administrative level, and this court finds that he must do so before seeking relief in federal court.

### *Exhaustion Generally*

■ In the instant case, there is no specific Congressional mandate requiring exhaustion. Thus, while exhaustion of administrative remedies is required pursuant to 8 U.S.C. § 1252(d)(1) in order to challenge final orders of removal, "this provision does not cover challenges to preliminary custody or bond determinations, which are quite distinct from 'final order[s] of removal.'" *O'Connell,* 355 F.3d at 1016. *Accord Grant,* 54 F.Supp.2d at 441 n. 5. Similarly, Congress does not require exhaustion prior to the filing of petitions brought under 28 U.S.C. § 2241.[3] *O'Connell,* 355 F.3d at 1016. Where, as here, "Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291 (1992).[4] For the reasons detailed herein, this court recommends that Campbell be required to exhaust his administrative remedies.

■ Ordinarily, "parties exhaust prescribed administrative remedies before seeking relief from the federal courts. Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy,* 503 U.S. at 144–45, 112 S.Ct. at 1086 (internal citation omitted). However, this general rule is not absolute, and "administrative remedies need not be pursued if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." *Id.* at 146, 112 S.Ct. at 1087 (quotations and citation omitted). The Supreme Court has recognized "three broad sets of circumstances in which the interests of the

---

**3.** The exhaustion requirement for § 2241 habeas petitions is a judicially created doctrine. *See Acevedo–Carranza v. Ashcroft,* 371 F.3d 539, 541 (9th Cir.2004)

**4.** The Supreme Court's decision in *McCarthy* "has been superseded by statute to the extent it held that federal prisoners seeking monetary damages in a *Bivens* action are not required under 42 U.S.C. § 1997e to exhaust administrative remedies provided by the Bureau of Prisons. However, *McCarthy*'s principle that when exhaustion is not statutorily mandated, 'sound judicial discretions governs,' 503 U.S. at 144, 112 S.Ct. 1081, 117 L.Ed.2d 291, remains good law, as does its further admonitions on how that discretion should be utilized." *O'Connell,* 355 F.3d at 1016 n. 5 (internal citation omitted).

individual weigh heavily against requiring administrative exhaustion." *Id.* They include:

> (1) where such requirement would subject an individual to an unreasonable or indefinite time frame for administrative action, (2) where the administrative agency lacks the competence to resolve the particular issue presented, or (3) the exhaustion of administrative remedies would be futile because the administrative body is shown to be biased or has predetermined the issue before it.

*Shurney v. INS*, 201 F.Supp.2d 783, 789 (N.D.Ohio 2001) (citing *McCarthy*, 503 U.S. at 146–48, 112 S.Ct. at 1088). None of these circumstances is present in this case.

### Application of Exhaustion Principles to the Instant Case

■ As an initial matter, there is nothing in the record indicating that pursuing administrative remedies would subject Campbell to an unreasonable delay in administrative action. To the extent there has been any delay in proceedings to date, the record indicates that it has been caused by Campbell's own conduct and refusal to cooperate in reaching a resolution of his case. The administrative process has been advancing in a timely fashion.

Campbell also has not shown that the administrative agency lacks competence to determine the issue that Campbell has attempted to raise by way of his Petition, namely, whether USCIS has the authority to have him detained and placed in removal proceedings in light of his refusal to apply for a change of status from refugee to lawful permanent resident. The BIA is often called upon to interpret INA requirements, including those addressing procedures for removal. *See, e.g., In re Sejid Smriko*, 23 I & N Dec. 836, 836–37, 2005 WL 3075402(BIA) (Nov. 10, 2005) (Third Circuit remands case to BIA to determine whether "an alien who has been admitted as a refugee and has adjusted his or her status to that of a lawful permanent resident may be placed in removal proceedings for acts or conduct amounting to grounds for removal under section 237(a) of the [INA]"). Courts consistently consider, and may defer to, the BIA's interpretation of its statutory authority, and there is no reason why the BIA should not be given the opportunity to address Campbell's claim as well. *See, e.g., Kaganovich v. Gonzales*, 470 F.3d 894, 897 (9th Cir.2006) (deferring to BIA's interpretation of INA to support conclusion that refugee may be removed even if refugee status has never been terminated); *Romanishyn v. Atty. Gen. of U.S.*, 455 F.3d 175, 184–85 (3rd Cir.2006) (deferring to BIA's "reasonable" interpretation of the INA that an alien who had adjusted his status to lawful permanent resident but whose refugee status had never been terminated could be placed into removal proceedings).

Campbell also has failed to establish that administrative review would be futile. He has not pointed to any case in which the BIA has finally determined whether a refugee who has been in the United States for over one year and refuses to adjust his status to lawful permanent resident may be subjected to removal proceedings. Moreover, Campbell's own case history includes at least one ruling terminating removal proceedings "based upon procedural issues relating to petitioner's refugee status." (Resp. Reply Mem. at 3). There is no evidence that the BIA is biased or has pre-determined the issue so as to excuse Campbell's exhaustion of his administrative remedies.

Finally, Campbell argues that he should be excused from the exhaustion requirement due to the Respondents' delay in the commencement of removal proceedings.

(Pet.'s Mem. at 5–6). The record shows that the first efforts to remove Campbell were initiated shortly after ICE took Campbell into custody. After the initial proceedings were terminated, efforts continued to be made to have Campbell participate in administrative proceedings, but his refusal to participate in any hearings relating to any adjustment of status resulted in his continued detention. After the habeas petition was filed, further efforts were undertaken to move the administrative process forward, again without Campbell's cooperation. Therefore, even if it is assumed that the length of Campbell's detention could constitute an exception to the general exhaustion rule, this court finds that any delay was caused by Campbell's own actions and does not excuse his obligation to exhaust administrative remedies. *See Demore,* 538 U.S. at 530–31, 123 S.Ct. at 1721 (fact that respondent spent six months in custody while removal proceedings were pending was justified where length of detention was caused by respondent's own request for a continuance of removal hearing). For all these reasons, this court recommends that the Petition be dismissed for failure to exhaust administrative remedies.

## IV. *CONCLUSION*

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the Respondent's Motion to Dismiss (Docket No. 6) be ALLOWED.[5]

**5.** The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); see also *Thomas v. Arn,* 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.,* 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir.1998).