In the

# United States Court of Appeals
## For the Seventh Circuit
_____

No. 07-3872

MOHAMED AL-SIDDIQI,

*Petitioner-Appellant,*

*v.*

DEBORAH ACHIM, Chicago Field Office Director,
Immigration and Customs Enforcement of
Homeland Security, TODD NEHLS, Sheriff of
Dodge County, and THOMAS POLSIN,
Deputy Jail Administrator, Dodge County
Detention Center,

*Respondents-Appellees.*

_____

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 07 C 728—**Rudolph T. Randa**, *Chief Judge.*

_____

ARGUED APRIL 14, 2008—DECIDED JUNE 27, 2008

_____

Before FLAUM, EVANS, and TINDER, *Circuit Judges.*

EVANS, *Circuit Judge.* Around a year and a half ago, an immigration judge (IJ) ordered Mohamed Al-Siddiqi released from detention upon the posting of a bond. Since then, Al-Siddiqi has repeatedly tried, without success, to post the bond. The Department of Homeland Security (DHS) refused to release Al-Siddiqi, justifying under

various rationales its defiance of the IJ's bond order. Al-Siddiqi then filed this petition for a writ of habeas corpus seeking enforcement of the bond order. The district court denied this petition, and Al-Siddiqi appealed.

DHS's indirect attempts to keep Al-Siddiqi detained have contributed to a shifting procedural backdrop that changed once again on the day we heard oral argument on his appeal. On that day the IJ—the same one who previously ordered Al-Siddiqi released on bond—denied Al-Siddiqi's asylum application, granted him voluntary departure, but ordered that he remain in custody until he leaves the United States. This latest development constrains us to affirm the denial of Al-Siddiqi's habeas petition.

Mohamed Al-Siddiqi, a 25-year-old citizen of Qatar, came to the United States to study. For a little over two years he attended various colleges in Madison and Milwaukee, Wisconsin, but in December 2006 he didn't maintain a full course load, resulting in the termination of his student visa. A month later DHS issued a notice to appear directing Al-Siddiqi to attend a removal hearing before an IJ, which was held shortly thereafter. The case was straightforward—Al-Siddiqi admitted that he violated the terms of his student visa but explained that he reduced his course load due to medical problems and that his application for the reinstatement of his student visa was pending. Finding Al-Siddiqi's excuses insufficient, the IJ ordered him removed. Al-Siddiqi appealed to the Board of Immigration Appeals (BIA).

Al-Siddiqi has been detained since January 2007. The same immigration officer who issued the notice to appear determined that Al-Siddiqi should remain in custody and informed Al-Siddiqi of his right to appeal this finding to

an IJ. Al-Siddiqi did appeal, and following his removal hearing the IJ held a bond hearing to consider Al-Siddiqi's request. The IJ disagreed with the immigration officer's assessment and ordered that Al-Siddiqi be released upon the posting of a $15,000 bond.

Al-Siddiqi's friends tried to post this bond four times. The first three times immigration officers refused payment based on technicalities, but each time Al-Siddiqi's friends and counsel remedied one deficiency, the officers raised a different reason for refusing payment, finally refusing payment because it was too late in the day. After the third attempt DHS received a letter from the Federal Bureau of Investigation (FBI), requesting that immigration officers "use all available legal recourse to prevent the release of Al-Siddiqi . . . ." That letter—five paragraphs long—states that the FBI "has linked Al-Siddiqi to a network believed to facilitate the recruitment of individuals who may pose a threat to the national security[.]" The network and Al-Siddiqi's role in it are not identified, nor is the potential threat to national security. To bolster its conclusion, the FBI noted that Al-Siddiqi was receiving a failing grade in some classes and he routinely travels outside of Milwaukee. The letter alleged other "suspicious" activity, equally devoid of context. For example, the FBI noted that Al-Siddiqi "tells people" that he is from Saudi Arabia, not Qatar, but does not explain when this misrepresentation occurred, how many times it happened, or who these "people" are. After DHS received this letter, Al-Siddiqi's friends tried to post the bond for the fourth time. DHS again refused payment.

The next day DHS revoked the IJ's $15,000 bond order (by what authority, we don't know) and again determined that Al-Siddiqi should remain in detention. Al-Siddiqi responded to this revocation in two ways:  he asked the

IJ for reconsideration, and he filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of Illinois. Subsequently, the petition was transferred to the United States District Court for the Eastern District of Wisconsin. DHS opposed Al-Siddiqi's motion for reconsideration, noting his potential threat to national security and providing the IJ with the letter it received from the FBI. The IJ held another bond hearing and rejected the government's request to keep Al-Siddiqi in detention, but raised the bond amount to $60,000. Although a transcript of this hearing is not part of the record, Al-Siddiqi's counsel represented at oral argument that the IJ refused to order Al-Siddiqi detained after concluding that the FBI's letter was insufficient to show that he was a threat to national security.

DHS immediately filed a notice to appeal the IJ's $60,000 bond order but withdrew it two days later, the same day the BIA affirmed Al-Siddiqi's removal order. Al-Siddiqi promptly petitioned this court for review of the BIA's affirmance and requested a stay of removal, which we granted. *Al-Siddiqi v. Gonzales*, No. 07-2181 (7th Cir. June 7, 2007). He tried again to post bond, but DHS again refused to accept payment. After these events transpired, Al-Siddiqi filed an amended habeas petition and moved for summary judgment, claiming that DHS's refusal to honor the IJ's $60,000 bond order was without legal authority and violated his right to due process.

Just a few days before DHS's response to Al-Siddiqi's summary judgment motion was due in the habeas case, the government moved the BIA to reopen Al-Siddiqi's removal proceedings. If granted, the government's motion would provide the same relief Al-Siddiqi sought in his petition for review, so he did not oppose the motion.

However, Al-Siddiqi informed the BIA that his non-opposition was contingent on the enforcement of the IJ's order to release him on $60,000 bond. The BIA granted the motion to reopen the removal proceedings but refused to enforce the IJ's bond order, noting that "removal proceedings are separate from bond proceedings" and therefore it could not reach matters concerning the bond. DHS's maneuver of reopening the case before the BIA necessitated the dismissal of Al-Siddiqi's petition for review before this court. *Al-Siddiqi v. Gonzales*, No. 07-2181 (7th Cir. Nov. 20, 2007).

As soon as the motion to reopen the removal proceedings was granted, DHS took the position that the whole matter—both the removal proceedings and the bond proceedings—was back to square one. Without revoking the IJ's bond order, DHS redid its "initial" bond determination and concluded that Al-Siddiqi should remain in custody, filling out the same paperwork it penned when Al-Siddiqi was first apprehended.

A couple of weeks later the district court denied Al-Siddiqi's petition for a writ of habeas corpus. Although neither party raised the issue, the court concluded that it lacked jurisdiction to hear the petition based on 8 U.S.C. § 1226(e), which shields the DHS's discretionary decisions regarding bond from judicial review. While noting that § 1226(e) allows constitutional challenges to the bond statute, it concluded that Al-Siddiqi was really challenging the DHS's "decision to disregard the IJ's order and refuse to accept the bond . . . a discretionary decision that is not subject to review . . . ." The court also discussed two alternative grounds for denying the petition. First, the court concluded that Al-Siddiqi could have appealed DHS's second "initial" bond determina-

tion but did not, and thus failed to exhaust his administrative remedies. Secondly, although the court concluded that DHS's refusal to accept the $60,000 bond payment after the BIA affirmed Al-Siddiqi's removal order was "wrong as a matter of law," the court nonetheless rejected Al-Siddiqi's due process argument. The court held that Al-Siddiqi's "individual interest in personal liberty is secondary to the potential threat posed by alleged terrorist activity." Al-Siddiqi appeals this decision.

Meanwhile, Al-Siddiqi's reopened removal proceedings marched along. Al-Siddiqi applied for asylum and withholding of removal, claiming that the government of Qatar—an ally of the United States—will kill or torture him if he is forced to return there because the FBI suspects he has ties to terrorism. The very morning we heard oral argument in Al-Siddiqi's habeas appeal, the IJ denied Al-Siddiqi's asylum application. The IJ concluded that the application was untimely and unsupported but granted Al-Siddiqi the privilege of voluntarily departing the United States. But because the IJ had "little confidence" that Al-Siddiqi would comply with the terms of voluntary departure, he ordered that he remain in custody until his departure. Al-Siddiqi has appealed this decision to the BIA, and that appeal, as of today, remains pending.

We must first determine whether we have jurisdiction to hear this case. According to 8 U.S.C. § 1226(e), DHS's "discretionary judgment" regarding bond determinations "shall not be subject to judicial review." The parties agree, as they must, that this section strips us of our jurisdiction to review judgments designated as discretionary but does not deprive us of our authority to review statutory and constitutional challenges. Because this provision contains no explicit bar to constitutional chal-

lenges or habeas review, the Supreme Court has held that habeas review survives. *Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *see also Hernandez v. Gonzales*, 424 F.3d 42 (1st Cir. 2005); *Gonzalez v. O'Connell*, 355 F.3d 1010, 1014-15 (7th Cir. 2004). But the parties disagree over which category Al-Siddiqi's appeal falls into. The government maintains that we lack jurisdiction because Al-Siddiqi contests only DHS's decision to ignore the IJ's bond order and does not raise a facial constitutional challenge to the bond statute. But Al-Siddiqi need not take on the whole statutory framework to raise a constitutional concern— after all, the Constitution may be violated by the application of a statute to a particular alien. To hold otherwise "ignores the Supreme Court's blanket holding in *Kim* that Congress's language in § 1266(e) was simply not clear enough to overcome the presumption that it was not depriving the federal courts of jurisdiction over constitutional questions, a presumption which is even stronger in the habeas context." *Gonzalez*, 355 F.3d at 1015 (asserting jurisdiction over alien's claim that mandatory detention under § 1226 was unconstitutional as applied to him); *see also Hussain v. Mukasey*, 510 F.3d 739, 743 (7th Cir. 2007). Al-Siddiqi argues that DHS's refusal to honor the IJ's bond order is without legal justification and violates his right to due process; our jurisdiction to review these claims remains intact.

Turning to the merits, we must note that the landscape of this case has changed significantly since the district court rendered its decision. When the district court denied Al-Siddiqi's habeas petition, a valid bond order was on the books, but DHS was ignoring it. DHS contends that the BIA's order reopening Al-Siddiqi's removal proceedings invalidated the IJ's bond order, allow-

ing DHS to simply redo its "initial" bond determination. But DHS never provided support for this proposition, which is belied by its own regulations. An alien may appeal a bond determination made by DHS to an IJ, but such bond proceedings are "separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding." 8 C.F.R. § 1003.19(d); *see also Matter of R-S-H- et al.*, 23 I. & N. Dec. 629, 630 n.7 (BIA 2003); *In re Adeniji*, 22 I. & N. Dec. 1102, 1115 (BIA 1999) (holding that evidence presented only in an alien's removal proceeding cannot be considered during the separate bond proceeding); *Matter of Balderas*, 20 I. & N. Dec. 389, 393 (BIA 1991). Not only do the regulations separate bond and removal proceedings, but the BIA also explicitly refused to reach matters regarding Al-Siddiqi's bond when reopening his case. The BIA denied Al-Siddiqi's request to enforce the IJ's bond order because it was outside the scope of the removal proceedings. To be sure, the reopening of Al-Siddiqi's removal proceeding restarted that matter, *Bronisz v. Ashcroft*, 378 F.3d 632, 637 (7th Cir. 2004), but it did not restart the unrelated bond proceeding or extinguish the IJ's bond order.

But things changed when the IJ reheard Al-Siddiqi's case and granted him voluntary departure. Voluntary departure entitles an alien to leave the United States at his own expense in lieu of an order of removal. 8 U.S.C. § 1229c(a), (b); *see Lopez-Chavez v. Ashcroft*, 383 F.3d 650, 651 (7th Cir. 2004). To be eligible for this relief, Al-Siddiqi had to show that he was a person of good moral character for the five years immediately preceding his application for voluntary departure and that he was not removable on terrorist grounds. 8 U.S.C. § 1229c(b)(1)(B), (C). Thus, by granting his application, the IJ once again rejected

DHS's contention that Al-Siddiqi poses a terrorist threat. But the IJ—the same one who previously ordered him released on bond—ordered that Al-Siddiqi remain in custody. The IJ concluded that Al-Siddiqi is just trying to "prolong his stay in the United States" and had "little confidence" that Al-Siddiqi would comply with the terms of voluntary departure if released. And the regulations governing voluntary departure applications empower the IJ to impose "such conditions as he or she deems necessary to ensure the alien's timely departure from the United States." 8 C.F.R. § 1240.26(c)(3).

Al-Siddiqi tries to avoid the impact of the IJ's new order by repeating that removal proceedings should "form no part of" the bond proceedings, 8 C.F.R. § 1003.19(d), therefore making the IJ's custody determination—made within the context of Al-Siddiqi's removal proceeding—ineffectual. True, an IJ's review of DHS's bond determination is a distinct proceeding from an alien's underlying removal proceeding. But here the IJ ordered Al-Siddiqi detained pursuant to his right to impose conditions on Al-Siddiqi's voluntary departure order, 8 U.S.C. § 1229c(a), (b); 8 C.F.R. § 1240.26(c)(3), not under his authority to review DHS's bond determinations. Voluntary departure applications, unlike the review of DHS's bond decisions, have routinely been decided during the underlying removal proceeding. *See, e.g., Yun Jian Zhang v. Gonzales*, 495 F.3d 773, 775-76 (7th Cir. 2007); *Dababneh v. Gonzales*, 471 F.3d 806, 808 (7th Cir. 2006); *Pede v. Gonzales*, 442 F.3d 570, 571 (7th Cir. 2006). Now Al-Siddiqi remains in custody not because DHS refuses to honor the IJ's former bond order, but because the IJ has determined that he should remain in custody as a condition of his voluntary departure.

While we affirm the denial of Al-Siddiqi's habeas petition, we do not endorse DHS's less than forthright efforts  to keep Al-Siddiqi detained. DHS, dissatisfied with the IJ's bond order, was far from powerless to contest it. It could have appealed the IJ's bond order. 8 C.F.R. § 236.1(d)(3); *id.* at § 1003.19(f). It could have revoked the order, triggering another round of appeals to the IJ and BIA. 8 U.S.C. § 1226(b); 8 C.F.R. § 236.1(d)(1); *id.* at § 1003.19(a), (f). And that's not all. If DHS suspected that Al-Siddiqi posed a threat to national security, it could have sought his detention as a suspected terrorist. 8 U.S.C. §§ 1226(c)(1)(D), 1226a. Instead, DHS flouted the IJ's order and refused to follow its own rules. It is not clear why DHS dodged its own regulations, although at oral argument counsel stated that DHS declined to seek Al-Siddiqi's detention as a terrorist alien pursuant to 8 U.S.C. §§ 1226(c)(1)(D), 1226a, because that's a "serious charge" that requires "serious evidence." The IJ agreed with that principle and found the brief letter from the FBI lacking. DHS's regulations empower him to make that determination, 8 C.F.R. § 236.1(d)(1); *see also* 8 C.F.R. § 1003.19(a); it was not for DHS to second-guess that determination through the back door. Nevertheless, the district court's order denying Al-Siddiqi's petition for a writ of habeas corpus is AFFIRMED.