PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-2246

RAYMOND DAKURA,

                    Petitioner,

          v.

ERIC H. HOLDER, JR., Attorney General,

                    Respondent.

On Petition for Review of an Order of the Board of Immigration
Appeals.

Argued: October 29, 2014          Decided: November 24, 2014

Before MOTZ, KING, and KEENAN, Circuit Judges.

Petition for review denied by published opinion. Judge King
wrote the opinion, in which Judge Motz and Judge Keenan joined.

**ARGUED:** Alfred Lincoln Robertson, Jr., ROBERTSON LAW OFFICE,
PLLC, Alexandria, Virginia, for Petitioner. Erica Miles, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.
**ON BRIEF:** Stuart F. Delery, Assistant Attorney General, Civil
Division, Emily Anne Radford, Assistant Director, Office of
Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Respondent.

KING, Circuit Judge:

Raymond Dakura, a native of Ghana in West Africa, petitions for review of the September 13, 2013 decision of the Board of Immigration Appeals affirming the denial of his application for adjustment of status (the "BIA Decision").[1] As explained below, we agree with the BIA that an alien — like Dakura — who falsely claims United States citizenship in seeking private employment is inadmissible as a matter of law under 8 U.S.C. § 1182(a)(6)(C)(ii)(I) (the "false claim bar"). We therefore deny Dakura's petition for review.

I.

Dakura entered the United States on January 16, 2008, pursuant to a nonimmigrant F-1 student visa. Dakura overstayed his visa by remaining in this country after he lost his status as a student.[2] On August 5, 2009, the Department of Homeland Security (the "DHS") issued Dakura a notice to appear, thereby

___

[1] The BIA Decision is found at J.A. 3-4. (Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this matter.)

[2] An alien who has been admitted to the United States by way of an F-1 student visa is "admitted for duration of status." 8 C.F.R. § 214.2(f)(5)(i). The term "duration of status" is defined as "the time during which an F-1 student is pursuing a full course of study at an educational institution . . . or engaging in authorized practical training following completion of studies." Id.

2

instituting removal proceedings against him. The evidence submitted in those proceedings is summarized below.

A.

Upon entering the United States from Ghana, Dakura was enrolled as a student at Lindenwood University in Missouri. His uncle, who was paying Dakura's tuition and acting as his sponsor, soon passed away. Because Dakura was unable to afford college tuition and related expenses, he withdrew from the university, though he hoped to return later, once he secured the necessary resources. At the time, Dakura was without any means of supporting himself. Dakura met a man in Missouri who arranged for Dakura to see Francis Assamoir in northern Virginia. In March 2008, Dakura relocated to Virginia, where he entered into a support agreement with Assamoir. Pursuant thereto, Dakura agreed to work and give his earnings to Assamoir, who was to provide Dakura with housing, calling cards, and living expenses.

In order to fulfill his part of the support agreement with Assamoir, Dakura had to obtain employment. His immigration status, however, posed a serious obstacle. The Immigration and Nationality Act (the "INA") requires a job-seeker to verify that he is either a United States citizen or a national of this country, and thus authorized to be employed. See 8 U.S.C. § 1324a(a)-(b). Dakura bypassed that roadblock by using the

3

identities of two American citizens — Emmanuel Nicholas Habib and Solomon Soehedey — to establish his eligibility for employment at McDonald's and Target. In each instance, Dakura sought employment by executing the DHS's Employment Eligibility Verification Form I-9 (a "Form I-9"), as required by federal law. See 8 U.S.C. § 1324a(b)(1)-(2), 8 C.F.R. § 274a.2. Therein, Dakura used Habib's and Soehedey's identities at McDonald's and Target, marking and signing Forms I-9 to attest, under penalty of perjury, that he was a "citizen or national of the United States." J.A. 101.

Dakura continued in his arrangement with Assamoir for approximately a year. Dakura eventually balked, however, upon realizing that the plan would not work, in that he was not earning or saving enough money to re-enroll at Lindenwood University. Dakura thus decided to terminate the arrangement with Assamoir, and so advised him. Assamoir responded by reporting Dakura to the authorities. As a result, Dakura was arrested and charged with several counts of identity theft and forgery for using false identities in seeking jobs with McDonald's and Target. Those charges were ultimately dismissed, but they resulted in the DHS instituting removal proceedings.

At a master calendar hearing in the immigration court on May 12, 2010, Dakura conceded the allegations made in the notice to appear. In August 2010, while his removal proceedings were

4

pending, Dakura married a woman who was already a United States citizen. On October 5, 2010, Dakura's wife petitioned the DHS for recognition of their marriage, seeking a visa for Dakura. Upon approval of the visa petition, Dakura applied to the DHS for adjustment of his status to that of a lawful permanent resident (the "adjustment application"). On March 26, 2012, an evidentiary hearing was conducted on the adjustment application.

B.

By oral decision of March 26, 2012, the Immigration Judge deemed Dakura removable and denied his adjustment application (the "IJ Decision").[3] In so ruling, the IJ initially noted that Dakura "admitted that he did not remain in status" under his F-1 student visa and conceded that he was removable. IJ Decision 2. Those admissions satisfied the DHS's burden of showing by clear and convincing evidence that Dakura was removable. Id. Turning to the adjustment application, the IJ found that Dakura's testimony was "basically" credible. Id. at 4.[4] Nonetheless, the

---

[3] The IJ Decision is found at J.A. 14-19.

[4] The IJ Decision suggested that Dakura's testimony was not entirely credible with respect to one factual point. Dakura testified that Habib, through Assamoir, had given Dakura permission to use Habib's identity in applying for work and verifying his employment eligibility. See J.A. 90-91. The DHS, however, presented contradictory evidence by way of Habib's victim statement to the police in connection with Dakura's criminal charges. Id. at 99. Therein, Habib averred that he "never gave [Dakura] permission" to use his identity. Id.

IJ determined that Dakura was inadmissible because he had falsely represented himself to be a United States citizen on Forms I-9 in seeking employment. In so concluding, the IJ relied on the provisions of the false claim bar, which renders inadmissible

> [a]ny alien who falsely represents, or has falsely represented, himself . . . to be a citizen of the United States for any purpose or benefit under this chapter (including section 1324a of this title) or any other Federal or State law.

8 U.S.C. § 1182(a)(6)(C)(ii)(I). The IJ then found that Dakura's "purpose" in representing himself as a citizen on the Forms I-9 was "obviously . . . to obtain employment." IJ Decision 4. That purpose, the IJ reasoned, "constitute[d] applying for an immigration benefit," and so Dakura was inadmissible and thus ineligible for an adjustment of status. Id. Accordingly, the IJ ordered Dakura removed to Ghana. On April 9, 2012, Dakura appealed the IJ Decision to the BIA.

The BIA Decision of September 13, 2013, affirmed the IJ Decision in all respects. First, the BIA ruled that the IJ had correctly determined that Dakura was inadmissible under the false claim bar, reasoning that "an alien who falsely claims United States citizenship on a Form I-9 is seeking a 'benefit' under the [INA]." BIA Decision 2. Second, the BIA accorded no weight to Dakura's position that he had completed the Forms I-9 under duress, observing that Dakura "submitted no evidence in

6

support of this claim." Id. Third, the BIA reasoned that the fact that Dakura was not convicted of identity theft was not pertinent, because "a conviction is unnecessary to support a finding of inadmissibility" under the INA. Id. Thus, the BIA affirmed the IJ Decision and rejected Dakura's appeal.

Dakura has petitioned for our review of the BIA Decision. We possess jurisdiction pursuant to 8 U.S.C. § 1252.

II.

Where, as here, the BIA has adopted an IJ decision and issued its own decision, we review both rulings. See Jian Tao Lin v. Holder, 611 F.3d 228, 235 (4th Cir. 2010). The BIA's determination that "an alien is not eligible for admission to the United States is conclusive unless manifestly contrary to law." 8 U.S.C. § 1252(b)(4)(C). We review legal issues de novo. See Djadjou v. Holder, 662 F.3d 265, 273 (4th Cir. 2011). We review an IJ's findings of fact for substantial evidence, accepting such findings as conclusive unless a reasonable adjudicator would have been compelled to reach a different conclusion. See id.

III.

By his petition for review, Dakura contends that the BIA Decision erred as a matter of law in ruling that an alien who

7

falsely claims citizenship on a Form I-9 is inadmissible under the false claim bar. While recognizing that the legal authorities — including decisions of our sister circuits and our own unpublished decisions — cut strongly against that argument, Dakura maintains that private employment is not an immigration benefit within the meaning of the false claim bar. Dakura alternatively urges that the false claim bar is not applicable in these proceedings because his use of other identities did not constitute direct claims of citizenship, he did not obtain an immigration benefit, and all misrepresentations about his identity were made under duress.

A.

The central question before us is whether an alien who falsely claims citizenship on a Form I-9 is thereby rendered inadmissible pursuant to the false claim bar. As explained below, we are satisfied to answer that question in the affirmative.[5]

The INA requires that, in order for an alien to adjust his status to that of a lawful permanent resident, he must be admissible. See 8 U.S.C. § 1255(a). The alien bears the burden

---

[5] In unpublished decisions, we have similarly ruled that an alien who falsely claims citizenship on a Form I-9 is inadmissible under the false claim bar. See Davis v. Holder, 472 F. App'x 234 (4th Cir. 2012); Ramsoondar v. Holder, 353 F. App'x 845 (4th Cir. 2009).

8

of proving that he "clearly and beyond doubt . . . is not inadmissible under [8 U.S.C. §] 1182." Id. § 1229a(c)(2)(A); see also Hashmi v. Mukasey, 533 F.3d 700, 702 (8th Cir. 2008) (noting that an alien applying for adjustment of status "is in a similar position to an alien seeking entry into the United States," and therefore shoulders the burden of establishing admissibility). Section 1182 identifies several bars under which aliens are legally "inadmissible" and thus "ineligible to be admitted to the United States," including situations implicating the false claim bar, where an alien makes a false claim of United States citizenship.

As relevant here, the false claim bar provides that an alien who falsely represents himself "to be a citizen of the United States for any purpose or benefit under this chapter (including section 1324a of this title) or any other Federal or State law is inadmissible." 8 U.S.C. § 1182(a)(6)(C)(ii)(I).[6] If an alien is inadmissible under the foregoing provision, a discretionary waiver of admissibility is unavailable from the Attorney General. See Sandoval v. Holder, 641 F.3d 982, 986

---

[6] Although not applicable here, a statutory exception to the false claim bar applies to permanent residents who are minor children of United States citizens, and who reasonably believed that they possessed citizenship when they made false representations with respect thereto. See 8 U.S.C. § 1182(a)(6)(C)(ii)(II).

9

(8th Cir. 2011) ("Unlike other kinds of misrepresentations, this ground of inadmissibility is not waivable, and it triggers a permanent bar to the alien's admissibility into the country."). In addition to the false claim bar, the INA contains a mirror provision, found at 8 U.S.C. § 1227(a)(3)(D)(i), which establishes an identical legal standard that renders an alien deportable — rather than inadmissible — for falsely claiming citizenship in the United States.[7] The courts have interpreted the scope of those provisions in tandem, relying on interpretations of one provision to construe the other. See, e.g., Ferrans v. Holder, 612 F.3d 528, 531 (6th Cir. 2010).

The false claim bar and § 1227(a)(3)(D)(i) have been applied to render aliens inadmissible or deportable in various contexts, such as where the alien had made oral misrepresentations to border officials in order to enter the

---

[7] The INA uses the terms "inadmissible" and "deportable" to differentiate between the admission status of aliens who are subject to removal proceedings. An alien applying for admission must prove that he is not "inadmissible." See 8 U.S.C. § 1255(a). An alien previously admitted to the United States may be ordered removed upon a determination that he is "deportable." Id. § 1227. Although the false claim bar and § 1227(a)(3)(D)(i) contain identical legal standards, they differ with respect to the burden of proof. An alien bears the burden of proving admissibility, and therefore must prove "clearly and beyond doubt" that the false claim bar does not apply. Id. § 1229a(c)(2)(A). The burden of proof under § 1227(a)(3)(D)(i) falls on the DHS, which must establish, by clear and convincing evidence, that the alien is deportable. Id. § 1229a(c)(3)(A).

10

United States, see Dugboe v. Holder, 644 F.3d 462, 470 (6th Cir. 2011), or where the alien made misrepresentations on a passport application, see Rodriguez v. Gonzales, 451 F.3d 60, 65 (2d Cir. 2006). Not all false claims of citizenship, however, implicate either the false claim bar or § 1227(a)(3)(D)(i). The courts have limited the applicability of those statutory bars by discerning whether the false claims of citizenship were made for a "purpose or benefit" under the INA or other federal or state law. Thus, the Third Circuit determined that the false claim bar does not apply if an alien falsely claimed to be a citizen upon arrest, and if such claim was for the purpose of minimizing the risk that the police would report him to the DHS. See Castro v. Attorney Gen., 671 F.3d 356, 370 (3d Cir. 2012). Relatedly, the Sixth Circuit concluded that an alien's false claim of citizenship on a small business loan application did not render him deportable under § 1227(a)(3)(D)(i), in that his immigration status did not impact whether he obtained a loan. See Hassan v. Holder, 604 F.3d 915, 928-29 (6th Cir. 2010).

Several of our sister courts of appeals have directly considered the issue we address today, and each has concluded that falsely claiming United States citizenship on a Form I-9, in seeking private employment, renders the alien making the false claim inadmissible under the false claim bar or deportable under § 1227(a)(3)(D)(i). See Crocock v. Holder, 670 F.3d 400,

11

403 (2d Cir. 2012) (concluding that false claim of citizenship made in seeking private employment renders alien inadmissible or deportable); Ferrans, 612 F.3d at 532 (same); Rodriguez v. Mukasey, 519 F.3d 773, 777 (8th Cir. 2008) (same); Kechkar v. Gonzales, 500 F.3d 1080, 1083-84 (10th Cir. 2007) (same); Theodros v. Gonzales, 490 F.3d 396, 402 (5th Cir. 2007) (same). Moreover, the Third Circuit — ruling on related issues — has indicated it would adopt the same position. See Castro, 671 F.3d at 369 ("There is no question that [the false claim bar] encompasses false claims of U.S. citizenship made during the employment eligibility verification process.").

In so ruling, each of those courts of appeals has primarily relied on the texts of the false claim bar and § 1227(a)(3)(D)(i). For example, the Eighth Circuit examined the language of the false claim bar and determined that "the explicit reference to § 1324a . . . indicates that private employment is a 'purpose or benefit' of the [INA]." Rodriguez, 519 F.3d at 777. That result was compelled, as the court explained, "because § 1324a prohibits all employers from knowingly employing unauthorized aliens, and a Form I-9 assists an employer in complying with this requirement and the DHS in enforcing compliance." Id.

We are satisfied with the persuasive reasoning set forth in Rodriguez, and agree that the false claim bar's reference to

12

§ 1324a compels the conclusion that an alien who falsely represents his citizenship on a Form I-9 is inadmissible.[8] Section 1324a(a)(1)(A) makes it "unlawful for a person or other entity . . . to hire . . . an alien knowing the alien is an unauthorized alien." An "unauthorized alien" is an alien not "lawfully admitted for permanent residence" or otherwise permitted by the Attorney General to be employed. 8 U.S.C. § 1324a(h)(3).

Section 1324a(b) also requires that prospective employers verify a prospective employee's eligibility for employment. The Form I-9 was created for that very purpose by the immigration authorities, pursuant to the IRCA. See 8 C.F.R. § 274a.2(a)(2). In order to properly complete a Form I-9, a prospective employer must physically examine the prospective employee's documentation, verifying his identity and eligibility to work. Id. § 274a.2(b)(1)(ii)(A). Both the prospective employee and the prospective employer must then attest, under penalty of perjury, that the prospective employee is not an unauthorized alien. See 8 U.S.C. § 1324a(b)(1)(A); 8 C.F.R. § 274a.2(a)(3).

---

[8] The false claim bar was enacted in 1996 as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, div. C, § 344(a), 110 Stat. 3009-546, 3009-637. The bar references § 1324a, which was enacted ten years earlier by the Immigration Reform and Control Act of 1986 (the "IRCA"), Pub. L. No. 99-603, § 101(a)(1), 100 Stat. 3359, 3360-72.

The Form I-9 therefore constitutes an important component of the INA's regulatory scheme to prevent unauthorized aliens from obtaining private employment, which is prohibited by § 1324a. As a result, the reference in the false claim bar to the provisions of § 1324a leaves no room for doubt that private employment constitutes a "benefit" under the INA. We thus recognize that, pursuant to the false claim bar, an alien who falsely claims to be a United States citizen on a Form I-9 in seeking private employment is inadmissible as a matter of law.

B.

Having resolved the foregoing legal question, we turn to the merits of Dakura's petition for review. In executing each Form I-9 — that is, when seeking employment at McDonald's and Target — Dakura checked the box attesting that he was a "citizen or national of the United States." J.A. 101. The IJ Decision found, however, that Dakura had specifically "claim[ed] to be a United States citizen." IJ Decision 4. That finding is amply supported by Dakura's testimony, where he confirmed that, in completing the Forms I-9, he was representing himself to be a citizen — rather than a national. And Dakura has not disputed that finding to either the BIA or in this petition. Thus, the evidence confirms the IJ's finding, as affirmed by the BIA, that Dakura falsely represented himself to be a United States citizen for the purpose of seeking the benefit of private employment.

14

Dakura makes three other contentions with respect to why the false claim bar does not render him inadmissible. First, Dakura asserts that his "use of another's identity was not a statement by him that he was a U.S. citizen." Br. of Pet'r 7. Nevertheless, Dakura's claims to McDonald's and Target that he was actually Habib and Soehedey — both United States citizens — does not remove him from the purview of the false claim bar. The salient fact is that Dakura attested on each of the Forms I-9 that he — the person seeking employment — was a United States citizen. See Rodriguez, 519 F.3d at 774, 778 (affirming BIA determination that alien was inadmissible under the false claim bar because he claimed to be another person who held citizenship); see also Valadez-Munoz v. Holder, 623 F.3d 1304, 1308-09 (9th Cir. 2010) (same).

Second, Dakura contends that the false claim bar does not apply to him because he did not receive any benefit as a result of his misrepresentations. Rather, Dakura maintains, Assamoir received all the benefits by keeping Dakura's paychecks. The false claim bar focuses on the reason that the false claim of citizenship was made, however, not the effect of the claim. Dakura's goal in claiming to be a citizen was to obtain employment. As he acknowledged at the IJ hearing, Dakura entered into the agreement with Assamoir to save money and return to college. Thus, Dakura falsely represented himself as

15

a United States citizen in seeking to gain employment, which constitutes an immigration benefit.

Third, Dakura asserts that he acted under duress when he misrepresented himself as a United States citizen. But he has presented no supporting authority for the proposition that an alien who makes a false claim of citizenship under duress is not legally inadmissible. Importantly, as the BIA emphasized, Dakura did not submit any evidence showing that his claims of citizenship were made under duress.

In these circumstances, we are satisfied that Dakura falsely claimed to be a United States citizen on Forms I-9 in seeking the immigration benefit of private employment. Dakura is therefore inadmissible as a matter of law under the false claim bar, and the BIA Decision correctly affirmed the IJ Decision's ruling that Dakura is not eligible for adjustment of status.

IV.

Pursuant to the foregoing, we deny Dakura's petition for review.

PETITION FOR REVIEW DENIED

16