**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 13, 2016[*]
Decided May 17, 2016

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 15-3623

| | |
|---|---|
| JOSEPH MBURU NJERI,<br>  *Petitioner*, | Petition for Review of an Order of the<br>Board of Immigration Appeals. |
| *v.* | No. A205-373-344 |
| LORETTA E. LYNCH,<br>Attorney General of the United States,<br>  *Respondent*. | |

**O R D E R**

Joseph Njeri, a 32-year-old citizen of Kenya, petitions for review of the denial of his application for protection under the Convention Against Torture, *see* 8 C.F.R. § 1208.16(c), and alternatively, of the Board of Immigration Appeal's failure to address his request for voluntary departure. We agree with the Board that Njeri is removable and has not established eligibility for relief, but the Board overlooked his request for voluntary departure, so we remand the case for the limited purpose of considering that issue.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

Njeri grew up in Kenya and at the age of 15 was recruited to join the Mungiki sect, a group this court has recognized as "a secretive, quasireligious, part gang, part mafia-like group that engages in criminal activity and violent intimidation." *Wanjiru v. Holder*, 705 F.3d 258, 260 (7th Cir. 2013) (internal quotation marks omitted). He was a low-level member for several years.

Njeri received a scholarship to attend college in Huntington, Indiana, and came to the United States in 2006 on an F-1 nonimmigrant student visa. In 2010 he graduated and married Angela Bowman, a United States citizen, who soon gave birth to their daughter. Njeri started working as a certified nursing assistant at a nursing home in Indiana. His F-1 visa authorized him to work in the United States from January 2010 until January 2011, but he continued working after it expired.

In February 2013 he filled out a Form I-9 Employment Eligibility Verification and attested—falsely—that he was a United States citizen. On the form he checked the box claiming United States citizenship in response to a question about his immigration status. He signed the form directly underneath the preprinted acknowledgment that "I am aware that federal law provides for imprisonment and/or fines for false statements … in connection with the completion of this form."

In June 2014 Njeri was taken into immigration custody (the record does not reflect how he came to the government's attention) and charged with being removable on two grounds: (1) failing to maintain the conditions of the nonimmigrant status under which he was admitted, *see* 8 U.S.C. § 1227(a)(1)(C)(i), and (2) falsely representing himself to be a citizen of the United States for the purpose of obtaining employment, *see id.* § 1227(a)(3)(D)(i). At his bond hearing several months later, Njeri's lawyer admitted that he was removable on the first ground—overstaying his student visa—but denied that he was removable on the second ground. Although Njeri admitted to filling out a Form I-9 on which he attested that he was a United States citizen, merely checking a box on the form was not enough, his lawyer argued, to establish that he had falsely represented himself as a citizen. The IJ disagreed and found Njeri removable on both grounds.

In January 2015 Njeri filed an I-589 application seeking withholding of removal and protection under CAT.[1] In his application he said that if he were returned to Kenya, he feared he would be killed by the Mungiki for deserting the group and that the Kenyan police would not be able to protect him. Coming to the United States for an education, he

---

[1] Njeri's lawyer told the IJ that Njeri was not seeking asylum because more than a year had passed since he entered the United States and any such request thus would be untimely.

said, defies the group's belief "that the western influences in Kenya should be forced out."

At a final hearing in May 2015, Njeri testified about his involvement with the Mungiki. Mungiki leaders, he said, warned him that the penalty for leaving the group would be death, and he described a group meeting in 2003 at which leaders told him about another member who recently had been stabbed to death with knives and machetes for attempting to leave the group. Njeri also said that he witnessed another member being beaten for failing to follow instructions.

The IJ then denied his application for withholding of removal and relief under CAT. Noting several inconsistencies between Njeri's testimony and his application, the IJ concluded that his testimony alone was not persuasive enough to meet his burden of proof. First, the IJ pointed out that Njeri had not mentioned in his application the two incidents involving the stabbing and the beating of the other Mungiki members. The IJ was not persuaded by Njeri's explanation for these omissions—that there was insufficient space on the I-589 form to detail every incident—because Njeri did not use all of the space on the form. Nor did he submit a separate affidavit elaborating on his allegations, as the I-589 form invites applicants to do. Second, the IJ thought Njeri's testimony about the Mungiki group's views on education inconsistent. In his application he said that coming to the United States to study contravened the Mungikis' beliefs; at the hearing, however, he testified that the group did not oppose education as much as deny that it was a priority, and indeed the topic never arose at meetings. And finally, the IJ noted that Njeri submitted a letter, purportedly from a Kenyan official, confirming a complaint from his mother in 2006 that Mungiki members had gone to her home in search of Njeri and threatened to kill him if they found him. But Njeri neither mentioned this incident in his I-589 application nor testified about it at the hearing. The IJ concluded that "although these inconsistencies do not necessitate an adverse credibility finding, … [Njeri's] testimony is insufficiently credible, persuasive, or specific to meet his burden of proof without corroboration."

The IJ also found Njeri's "minimal" corroborative evidence insufficient to carry his burden of proof under the REAL ID Act, 8 U.S.C. § 1158(b)(1)(B). His answers on the I-589 were brief and vague, and he did not submit a written statement with more details. The IJ gave limited weight to the letter from the Kenyan official because Njeri laid no foundation for the document and did not testify about how he obtained it (his lawyer said it was attached to an email he had received from a friend of Njeri in Kenya). The IJ further determined that corroborative evidence would have been reasonably attainable

because Njeri admitted that he could have asked his mother and sisters in Kenya to provide affidavits.

No longer represented by counsel, Njeri appealed to the Board, but the Board dismissed his appeal. The Board agreed with the IJ that Njeri was removable both for failing to maintain the conditions of his nonimmigrant status and for falsely representing on the Form I-9 that he was a United States citizen. Regarding Njeri's claim under CAT, the Board agreed with the IJ that his testimony alone was insufficient to satisfy his burden of proof and he otherwise failed to corroborate critical elements of his claim with reasonably obtainable evidence, such as affidavits form his mother and sisters in Kenya. The Board added that the IJ acted within her discretion in rejecting Njeri's explanation for the omissions in his written application, as well as according only limited weight to the government official's letter. Regarding Njeri's claim for withholding of removal, the Board pointed out that he did not appeal the IJ's denial of that claim and therefore waived any challenge to it. The Board did not, however, address a request for voluntary departure that Njeri made, apparently for the first time, in the closing portion of his appellate brief.

In his petition for review, Njeri first challenges the Board's finding that he falsely represented himself to be a United States citizen on a Form I-9.[2] Merely checking off the citizenship box on that form, he says, "alone cannot be sufficient to demonstrate a false claim of United States citizenship." He cites *Rodriguez v. Mukasey*, 519 F.3d 773 (8th Cir. 2008), in which the Eighth Circuit described a prior version of the form as "poorly designed" and "ambiguous[]"; that earlier version asked applicants to check one box if they were either a "citizen or national of the United States," glossing over the distinction that a false claim of nationality—unlike citizenship—does not render an alien inadmissible under § 1227(a)(3)(D)(i). *See Rodriguez*, 519 F.3d at 776–77.

*Rodriguez* does not help Njeri, however, because the more recent version of the Form I-9 that he signed no longer contains the ambiguous disjunctive phrasing; the box on the form he checked states only that he was a "citizen of the United States." By checking that box, he made an "objectively false representation of citizenship—and citizenship alone." *Etenyi v. Lynch*, 799 F.3d 1003, 1008 (8th Cir. 2015); *see Dakura v. Holder*, 772 F.3d 994, 999 (4th Cir. 2014) (collecting cases holding that false claim of

---

[2] Njeri concedes that he is removable for failing to maintain his nonimmigrant status after his student visa expired, *see* § 1227(a)(1)(C)(i), but his marriage to a United States citizen would permit a waiver of that problem, *see Pouhova v. Holder*, 726 F.3d 1007, 1009 n.1 (7th Cir. 2013); *Etenyi v. Lynch*, 799 F.3d 1003, 1005–06 (8th Cir. 2015).

citizenship on Form I-9 renders alien deportable under § 1227(a)(3)(D)(i)). Njeri implies that he may not have signed the Form I-9, asking us to compare his signature on the Form I-9 with his signature on another document in the record, but his lawyer conceded to the IJ that Njeri did fill out the form. Substantial evidence thus supports the finding that Njeri is removable for falsely claiming to be a citizen of the United States.

Njeri next challenges the IJ's conclusion that he failed to meet his burden of proving eligibility for relief under CAT. He maintains that he testified credibly about his fear of persecution at the hands of the Mungiki, that his fear is supported by news articles and country reports that describe incidents of the Mungiki punishing deserters, and that he corroborated his claims with the letter from the Kenyan official. To the extent that the IJ expected further corroboration, he says that the IJ should have specified what other evidence was needed. Moreover, he says the IJ should have tempered her expectations regarding the sort of corroboration available to him while he was detained in immigration custody.

But the IJ correctly concluded that Njeri failed to show that he more likely than not would be tortured if returned to Kenya. *See* 8 C.F.R. § 1208.16(c)(2). Although the IJ did not completely discredit Njeri's hearing testimony, the IJ nonetheless was permitted to require corroboration after noting several inconsistencies between his testimony and his earlier application. 8 U.S.C. § 1158(b)(1)(B)(ii). The IJ (and the Board) properly accorded little weight to the only corroboration that Njeri provided—the scanned copy of a letter purportedly from a Kenyan government official detailing a complaint Njeri's mother made in 2006—because Njeri did not testify how he obtained the letter. Njeri argues that the IJ should have allowed him to supplement the letter with more information, but Njeri knew before the final hearing that the letter's reliability was in question; the IJ had previously questioned its authenticity when he first submitted it at a hearing a few months before the final hearing. As for Njeri's contention that the IJ (and the Board) had unreasonable expectations about the type of corroboration he could obtain, substantial evidence supports the conclusion that Njeri reasonably could have obtained affidavits from his mother or sisters, who knew about his affiliation with the Mungiki. Although Njeri says that he could not contact them because he was detained, he testified—as the IJ pointed out— that his wife could have asked them to write letters on his behalf.

Finally, Njeri argues that the Board failed to address two of his arguments. First, he says the Board should have decided whether the IJ erred in finding that he was a danger to society. But that finding was made in relation to Njeri's bond determination, a

proceeding distinct from his underlying removal proceedings. *See* 8 C.F.R. § 1003.19(d); *Al-Siddiqi v. Achim*, 531 F.3d 490, 495 (7th Cir. 2008).

Second, Njeri argues that the Board did not address his alternative request for voluntary departure. The government acknowledged this oversight and asked us to remand the case so that the Board in the first instance could consider Njeri's request. Although we initially denied the motion, we now conclude that remand is necessary for the Board to consider the issue. *See Gonzales v. Thomas*, 547 U.S. 183, 185 (2006) (discussing "ordinary remand rule," which requires that courts remand issues not considered by the Board in the first instance (internal quotation marks omitted)); *I.N.S. v. Orlando Ventura*, 537 U.S. 12, 16 (2002) ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands."); *Padilla-Padilla v. Gonzales*, 463 F.3d 972, 982 (9th Cir. 2006) (remanding to Board to consider eligibility for voluntary departure in the first instance).

Accordingly we DENY the petition in part and VACATE and REMAND for further proceedings with respect to voluntary departure.